The Honorable S. Kate Vaughan

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RONALD FINKBONNER, <br><br> Defendant. | NO. MJ24-617 <br><br> COMPLAINT FOR VIOLATIONS OF <br> 21 U.S.C. §§ 841(a)(1), (b)(1)(B) & (b)(1)(C) |

BEFORE The Honorable United States Magistrate Judge S. Kate Vaughan, United States Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

**(Possession with Intent to Distribute Fentanyl)**

On or about February 9, 2023, in Whatcom County, within the Western District of Washington, **RONALD FINKBONNER** did knowingly and intentionally possess, with the intent to distribute, a controlled substance, N-phenyl-N-[ 1-( 2-phenylethyl )-4-piperidinyl ] propanamide (fentanyl), a substance controlled under Title 21, United States Code.

COMPLAINT - 1
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is further alleged that the offense involved 40 grams or more of a mixture and substance containing a detectable amount of fentanyl.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

## COUNT 2

**(Possession with Intent to Distribute Fentanyl)**

On or about July 22, 2024, in Whatcom County, within the Western District of Washington, **RONALD FINKBONNER** did knowingly and intentionally possess, with the intent to distribute a controlled substance, N-phenyl-N-[ 1-( 2-phenylethyl ) -4-piperidinyl ] propanamide (fentanyl), a substance controlled under Title 21, United States Code.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT 3

**(Possession with Intent to Distribute Methamphetamine)**

On or about July 22, 2024, in Whatcom County, within the Western District of Washington, **RONALD FINKBONNER** did knowingly and intentionally possess, with the intent to distribute a controlled substance, being a mixture or substance containing a detectable amount of methamphetamine, a substance controlled under Title 21, United States Code.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

The undersigned complainant, being duly sworn, hereby deposes and says as follows:

//

//

COMPLAINT - 2
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the DEA, currently assigned to the Bellingham Resident Office in Bellingham, Washington. I have been employed as a DEA Special Agent since 2009 and am assigned to investigate drug trafficking organizations operating in the Western District of Washington.

2. My duties and experience as a Special Agent include the enforcement of federal criminal statutes, including statutes related to drug offenses, firearm offenses, money-laundering offenses, and other criminal offenses. As a Special Agent of the DEA, I am authorized by law to conduct investigations, execute search warrants, and make arrests for federal felony offenses.

3. I have completed the DEA Basic Agent Training program at the DEA Academy in Quantico, Virginia. I have participated in numerous narcotics investigations at both the local and federal level, and I have participated in the execution of local and federal search warrants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state-controlled substance laws, including the trafficking and distribution of cocaine, methamphetamine, heroin, fentanyl, marijuana, and other dangerous drugs.

4. I have interviewed numerous drug dealers, drug users, and knowledgeable confidential sources about the lifestyles, appearances, and habits of drug dealers and users. I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store, and distribute narcotics, as well as how they collect, conceal, and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, internet, telephonic and computer applications, coded communications, slang-filled conversations, false and fictitious identities, and other

COMPLAINT - 3
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

means to facilitate their illegal activities and mislead law enforcement investigations. I have observed and have had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ. I have examined narcotics customers' supplier lists, pay/owe ledgers maintained by traffickers, and other documentation related to narcotics trafficking. I have also examined documentation of various methods by which cocaine, methamphetamine, heroin, fentanyl, marijuana, and other illicit drugs are smuggled, transported, and distributed. I have participated in numerous hours of surveillance of narcotics traffickers. During surveillance, I have personally observed narcotics transactions, counter surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings. Acting in an undercover capacity, I have acquired dangerous drugs from drug traffickers and learned about methods in thwarting law enforcement officers while trafficking drugs. I have participated in numerous investigations involving the interception of wire and electronic communications. I have been involved with the review and decoding of veiled intercepted conversations between narcotics traffickers that were subsequently substantiated. Throughout my career in law enforcement, I have received training from, worked with, spoken with, and gleaned knowledge from several experienced federal, state, local, and international narcotics officers concerning the use of cell phones and mobile applications by drug traffickers to facilitate drug trafficking.

5. I have also worked on drug investigations involving the use of court-authorized wiretaps under Title III. In that capacity, I have had the opportunity to monitor, listen to, and review transcripts and line sheets documenting the content of intercepted conversations involving the trafficking of cocaine, methamphetamine, fentanyl, heroin, and other narcotics, by persons who used some form of code to attempt to thwart law enforcement detection. I have also spoken with and/or interviewed drug dealers or

COMPLAINT - 4
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

confidential sources (informants) who were experienced in speaking in coded conversation. I have also participated in investigations into drug dealers who engage in the promotion of prostitution, including interviews and reviewing social media and electronic communication search warrant returns. From these experiences, and also from discussions with other experienced agents, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers and those promoting prostitution in the course of their criminal activities, including their use of firearms to protect their related activities and of cellular telephones and other electronic means to facilitate communications while avoiding law enforcement scrutiny.

6. The facts set forth in this Affidavit are based on my own personal observations, knowledge, training, and experience; information obtained from other agents and witnesses; review of documents and records related to this investigation; and communications with others who have personal knowledge of the events and circumstances described herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant, and therefore does not set forth all of my knowledge about this matter.

## I. SUMMARY OF PROBABLE CAUSE

### Overview

7. The United States, including the DEA, the Bureau of Indian Affairs (BIA), and the FBI, is conducting a criminal investigation of a regional DTO that is supplied primarily by out-of-state sources regarding possible violations of the Target Offenses. Investigators are referring to this regional DTO, to include its out-of-state suppliers, as "Jackson DTO" and have identified Marquis Jackson and Markell Jackson as prominent members of the DTO.

8. FBI's investigation into the Jackson DTO began in early 2022 and identified that the Jackson DTO is affiliated with a local street gang known as "44 Holly," which is

COMPLAINT - 5
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  a subset of the Crips gang. Concurrently, DEA agents learned that in September 2023,
2  several vulnerable persons had recently died from fentanyl overdoses and suspected that
3  Markell Jackson, a member of the Jackson DTO, supplied fentanyl to Lummi Tribal
4  Members during this time period. Federal, State, and Tribal agencies collaborated and
5  uncovered a network of drug trafficking across multiple states.
6       9.     On June 10, 2024, U.S. District Court Judge John Chun signed a Title III
7  order authorizing the interception of wire and electronic communications on Markell
8  Jackson's cellular telephone and other phones of criminal associates. In addition, GPS and
9  PRTT data for this phone and associates' phones were also authorized. On August 5, 2024,
10 U.S. District Court Judge Lauren King signed a Title III order authorizing the interception
11 of wire and electronic communications of telephones used by Mandel Jackson, Terrique
12 Milam, and Edgar Valdez, all members of the Jackson DTO. On August 10, 20024, at the
13 direction of federal agents, Phoenix Police Department stopped a vehicle driven by Jevonte
14 Tyrell and passenger Miracle Patu-Jackson, both members of the Jackson DTO. During
15 the stop, officers seized approximately 100,000 fentanyl pills. One week later, a federal
16 search warrant was executed at a residence controlled by Edgar Valdez in Phoenix, AZ.
17 During a search of the residence, agents seized approximately 300,000 fentanyl pills, 1.3
18 kilograms of fentanyl powder, and 2.5 kilograms of crystal methamphetamine.

19 **February 9, 2023, Seizure of Fentanyl from RONALD FRANK FINKBONNER**

20      10.    On February 9, 2023, officers of the Lummi Tribal Police Department (LPD)
21 conducted a search warrant of a motorhome occupied by RONALD FINKBONNER in the
22 vicinity of a rural address on Lummi Tribal Lands at 2977 Smokehouse Road, Bellingham,
23 WA. During the search, officers and detectives located multiple bags of blue "M30"
24 fentanyl pills, a container of fentanyl powder, a glass container of crystal
25 methamphetamine, paraphernalia for distribution, and two digital scales. Officers weighed
26 the exhibits and noted that the fentanyl pills (approximately 622 pills) weighed
27

COMPLAINT - 6  
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

approximately 89 grams, the crystal methamphetamine weighed approximately 30 grams, and the fentanyl powder weighed approximately 22 grams. Two other people, a male and a female, were placed under detained who were in the same RV with FINKBONNER. A Bureau of Indian Affairs (BIA) Special Agent arrived on scene to assist with interviews and collection of evidence. FINKBONNER declined to be interviewed. An unnamed adult male (hereafter referred to as "witness1"), who was detained in the RV, agreed to be interviewed. During an interview with witness1, he stated that he had purchased pills from FINKBONNER. Witness1 did not provide any additional information but was cited and released due to his cooperation. The unnamed adult female, the other detainee from the RV, agreed to be interviewed. During an interview with witness2, she stated that FINKBONNER sells "blues" (slang for fentanyl pills), "fatties" (fatties or fettys are slang for fentanyl powder), and "day" (slang for crystal methamphetamine). Witness2 stated that she alone observed FINKBONNER distributing at least 20 different transactions a day. Witness2 believed that FINKBONNER goes through a "boat" (slang for 1,000 fentanyl pills) every couple days. Witness2 did admit that a small bag of pills located in her purse belonged to her. Due to the witness being cooperative, she was cited and released.

11. Based on the amount of fentanyl in FINKBONNER's possession, and the statements of the witnesses, FINKBONNER possessed a distribution amount of fentanyl and was actively distributing fentanyl and methamphetamine. The substance which appeared to be methamphetamine field tested presumptively positive for methamphetamine. The suspected fentanyl pills, based on my training and experience, appeared consistent with other pills that have tested positive for the presence of fentanyl.

12. Officers recovered approximately 111 gross grams of fentanyl pills and fentanyl power, and approximately 30 grams of suspected methamphetamine. The drugs were submitted to the Washington State Patrol lab for testing. Testing is pending.

//

COMPLAINT - 7
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**July 22, 2024, Seizure of Fentanyl and Crystal Meth from RONALD FRANK FINKBONNER**

13. During the federal interception of cellular phones used by Markell Jackson and Terrique Milam, agents captured text messages from a cell phone number where the person was ordering drugs. On June 12, 2024, Jackson ((206) 468-4885) and the user of (425) 232-3234 (agents later confirmed that phone number (425) 232-3234 was used by FINKBONNER during this intercept) exchanged the following messages:

| | | |
|---|---|---|
| FINKBONNER: | Ya bri I've got 450 |
| FINKBONNER: | Did you get my text |
| Jackson: | Yep |
| Jackson: | B there |
| FINKBONNER: | Hey I'm running my dad in the casino real quick |
| FINKBONNER: | Okay bro I'm back home now |
| Jackson: | ok |
| FINKBONNER: | Bro I'm up in the shower |
| FINKBONNER: | Okay bro getting ready to head to town here are you going to be here anytime soon? |
| FINKBONNER: | Okay bro so I left I'm headed to Ferndale right now |
| Jackson: | wya bro |
| Jackson: | U ferndal |
| FINKBONNER: | No I'm just by the big b**** now |
| FINKBONNER: | Headed towards Bellingham |
| Jackson: | I'm headed to DMV |

14. Based on my training and experience, I believe that FINKBONNER informed Jackson that he had $450 to purchase drugs with. I also believe that the two parties began to communicate on where to meet. Agents were unable observe this meeting

COMPLAINT - 8
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

but continued to monitor the cellular phone interceptions. FINKBONNER continued to communicate with Jackson and criminal associate Milam.

15. On June 23, 2024, Jackson ((206) 468-4885) and FINKBONNER ((425) 232-3234) exchanged the following messages, which were intercepted:

| | |
|---|---|
| FINKBONNER: | Yo bro need a bost |
| Jackson: | Meet outlets |
| Jackson: | way |
| Jackson: | bro u wanna meet |

16. Based on my training and experience, I believe that FINKBONNER requested a "bost" (misspelling for the slang word "boat" which is commonly used for 1,000 fentanyl pills) from Jackson. Jackson then offered to meet at "outlets" which is likely the outlet mall complex in Tulalip, half-way between Seattle and Bellingham.

17. On July 22, 2024, Lummi PD were on the lookout for Ronald FINKBONNER as he had an outstanding felony warrant for his arrest. LPD received a call that FINKBONNER and his companion were observed walking on Smokehouse Road near Kinley Way on Lummi Tribal Lands. Officers arrived to arrest FINKBONNER, however upon their arrival, officers did not see FINKBONNER. An officer observed his companion go into a residence on Smokehouse Road. Officers surrounded the residence, knocked on the doors and bedroom windows and received no response. Officers presumed FINKBONNER and his companion were most likely inside FINKBONNER's residence on Smokehouse Road. Officers applied for and received a Lummi Tribal Court search warrant to enter the residence to take him into custody. After entering the residence to take FINKBONNER into custody, LPD officers observed blue fentanyl pills in plain view. Officers applied for an amended search warrant, which was granted, to search the residence for controlled substances paraphernalia, packaging material, monies scales, items of dominion and control, communication devices, locked/unlocked boxes, bags, and

COMPLAINT - 9
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

containers. During a search of the residence, officers seized approximately 160 suspected fentanyl pills, 20.1 grams of crystal methamphetamine, several digital scales, and a cell phone.

18. Based on the quantities of suspected fentanyl pills in FINKBONNER's possession, along with FINKBONNER's past conduct of selling fentanyl pills, FINKBONNER possessed the pills with intent to distribute them. FINKBONNER had numerical notations on a plastic medicinal container with multiple individual small one-inch plastic baggies each containing suspected methamphetamine, which indicated that FINKBONNER also possessed the methamphetamine with intent to distribute it.

19. LPD officers called telephone number (425) 232-3234, the number used by FINKBONNER, and observed the phone in custody was ringing. Agents wrote a federal search warrant for that phone and on July 30, 2024, Honorable Magistrate Judge Brian Tsuchida authorized a search of the cell phone. During a search of the phone, agents located cell phone numbers for Markell Jackson, (206) 468-4885 listed as "Choop9" and Terrique Milam, (206) 475-2800 listed as "Choopo#2." Agents observed messages between FINKBONNER and "Choop9" and confirmed that the messages were the same that were intercepted during the wiretap investigation. In addition, agents observed numerous messages between FINKBONNER and Terrique Milam ("Choopo#2"). Below is an excerpt of June 24, 2024, text messages involving drug trafficking:

| | | |
|---|---|---|
| FINKBONNER: | | Hey bro I threw an extra 300 can you throw me an extra couple of rolls. |
| Milam: | | Here |
| Milam: | | way |
| Milam: | | way |
| FINKBONNER: | | I'm standing out here at the front bro |
| FINKBONNER: | | Hey Brother send entrance where you at |

COMPLAINT - 10  
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

| | | |
|---|---|---|
| 1 | FINKBONNER: | Right by the front entrance where I'm at where you at |
| 2 | FINKBONNER: | Dang bro I gave you an extra 100 bucks didn't i |
| 3 | FINKBONNER: | Damn brother to the whole roll short too |
| 4 | FINKBONNER: | Yup 1100 |
| 5 | FINKBONNER: | A whole roll short |
| 6 | Milam: | I got you I don't see no extra 100 I will bring you it tonight |
| 7 | | it should've been extra it weighed more then it was supposed |
| 8 | | to |
| 9 | Milam: | I'll give you extra |
| 10 | FINKBONNER: | Nope 1100 |
| 11 | Milam: | I got |
| 12 | FINKBONNER: | Aight cool that works then |

20. Based on my training and experience, I believe that FINKBONNER was requesting an unknown fentanyl quantity from Milam. A "roll" is slang for 100 fentanyl pills, so it is possible that whatever amount FINKBONNER and Milam agreed to earlier, FINKBONNER was asking for more "rolls" in addition to the earlier amount upon which they agreed. At some point, it appears that Milam provided less fentanyl pills to FINKBONNER than the agreed amount and Milam assured FINKBONNER that he would correct this mistake.

21. On July 11, 2024, FINKBONNER was communicating by text messaging with his paramour, Patricia Topaum, who was using cellular phone number (360) 922-2302, listed as "Babes" Patty Ann under FINKBONNER's contacts. An excerpt of some of those text messages are as follows:

| | | |
|---|---|---|
| | Topaum: | I'm on my way home and oh yeah my daughter needs him to |
| | | re do that paper work tomorrow for the car cuz he is getting |

COMPLAINT - 11
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

|   |   |   |
|---|---|---|
| 1 |  | harassed by the. Cops cuz she did not know whos name was |
| 2 |  | on it |
| 3 | FINKBONNER: | Ok tomorrow we can go have him sign it in front of a rotary |
| 4 | FINKBONNER: | Baby imma just gonna get a whole zip of day |
| 5 | FINKBONNER: | Imma pick up right now |
| 6 | FINKBONNER: | What is that face for |
| 7 | FINKBONNER: | We r gonna pay like 6.6 per g. N we charge like 25 per g so |
| 8 |  | that like 20 pee g profit. So 20×28=560-200 =360 so we clear |
| 9 |  | 300 easy. |
| 10 | FINKBONNER: | With Farrah we paying 300 for 3g. That's 100 per g. N we |
| 11 |  | seller at 100 per g. That zero profit. |
| 12 | FINKBONNER: | Even if we pay 200. That's 66.66 per g. That puts us at 33per |
| 13 |  | g profit. Which means we clear 99 per b. |

22. Based on my training and experience, I believe that FINKBONNER was calculating the return on investment from buying and reselling drugs. In addition, I believe that FINKBONNER was referring to a local Lummi source of supply named Farrah BRADY. Agents reviewed numerous other text messages on FINKBONNER's phone and it was apparent that FINKBONNER was re-selling drugs to other people in Whatcom County. FINKBONNER is also purchasing and re-selling various drugs such as "Day" and "White Girl." I know from my training and experience that "day" is slang for crystal methamphetamine while "white girl" is slang for cocaine.

## **CONCLUSION**

23. Based on the above facts, I respectfully submit that there is probable cause to believe that RONALD FINKBONNER did knowingly and intentionally possess with intent to distribute a N-phenyl-N-[ 1-( 2-phenylethyl )-4-piperidinyl ] propanamide

COMPLAINT - 12
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(fentanyl) and a mixture or substance containing methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).

_____
Kenneth Richardson
Special Agent
Drug Enforcement Administration

Based on the Complaint and Affidavit sworn to before me by telephone, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 30th day September, 2024.

_____
S. KATE VAUGHAN
UNITED STATES MAGISTRATE JUDGE

COMPLAINT - 13
United States v. Ronald Finkbonner

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970